UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLUMBIA DATA PRODUCTS, INC.,<br><br>       Plaintiff,<br><br>v.<br><br>AUTONOMY CORPORATION LIMITED, IRON MOUNTAIN, INC., IRON MOUNTAIN INFORMATION MANAGEMENT, INC., and CONNECTED CORP.,<br><br>       Defendants. | Civil Action No. 11-12077-NMG<br><br>**Leave to File Granted<br>on October 17, 2012** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**I. INTRODUCTION**

Nothing in the Opposition changes the fact that Plaintiff has no good faith viable basis for continuing to evade this proper discovery based on asserted privileges that (a) have no application to this fact situation, and, in any event, (b) were strategically and voluntarily waived long ago by Plaintiff. Indeed, on this latter point, it is an open-and-shut case. It is the law of *every* jurisdiction, in both federal and state courts, that a party cannot wield privilege protections as both a sword and a shield without waiving such protections. This is Discovery 101 – Plaintiff *chose* to provide Defendant with a copy of the audit and *chose* to allege claims based on this claimed protected information, and therefore must provide all relevant evidence (not a partial, self-serving record) to allow Defendant to test the validity of such information and allegations – particularly because the undisputed evidence indicates that Plaintiff *steered* PWC to its findings. Plaintiff never squarely addresses these decisive facts or law because it cannot do so. Instead,

1

Plaintiff dismisses this fundamental rule of law as "frivolous" and "nonsensical," tries to distract the Court with pages and pages of irrelevant facts and exhibits, and ultimately feigns bewilderment over how materials prepared in anticipation of litigation can receive less protection than the same materials prepared by an expert after litigation has commenced. All the while, Plaintiff ignores and refuses to acknowledge that the obvious answer lies in *its own conduct*: namely, Plaintiff strategically *chose* to strip such materials of any possible protections in litigation by voluntarily providing its adversary with a copy of PWC's audit and placing the entire audit engagement directly at issue in its Complaint. This Motion should be granted.

## II. ARGUMENT

### A. RULE 26(b)(4) PROTECTIONS DO NOT APPLY TO PWC's AUDIT

In the Motion, Defendant showed Plaintiff has no valid basis for its assertion of Rule 26(b)(4) as the basis for withholding drafts of PWC's audit, or communications regarding such drafts, communications among Plaintiff's own employees regarding the audit, or direct communications with PWC. Mot. at 10-13. As shown therein, Rule 26(b)(4) applies only to discovery of a *testifying* expert and drafts of a true Rule 26 *expert report*. Here, however, the record is clear that PWC was not a "testifying" expert at the time of its audit, and that PWC's audit report cannot possibly be claimed as an "expert report" under Rule 26(b)(4). *Id.*

**Plaintiff's Opposition Argument:**

In yet another shift in position, Plaintiff now argues that Defendant is "barking up the wrong tree" regarding the assertion of Rule 26(b)(4) as a basis for withholding PWC materials. According to Plaintiff, Rule 26(b)(4) is "irrelevant" and "warrants no response" because Plaintiff does not assert protection under Rule 26(b)(4), but only Rule 26(b)(3). Opp. at 10-11. Plaintiff continues to be a "moving target" as to why it is withholding this proper discovery.

**Reply to Plaintiff's Contentions**

The notion that Plaintiff has not objected based on Rule 26(b)(4) is false. In its *final* meet and confer letter of August 24, 2012, Plaintiff's counsel explicitly asserted Rule 26(b)(4) as the basis for withholding the materials at issue. That letter is **Exhibit "N"** to the Baim Affidavit in support of the Motion. Therein, Plaintiff's counsel stated that he is withholding drafts of the audit pursuant to "amended Rule 26(b)(4)(B)," and that Rule 26(b)(4)(C) protects all communications with PWC (with three limited exceptions). Plaintiff's counsel concluded by agreeing to amend responses to the requests at issue to read that Plaintiff will produce documents "*in accordance with Fed. R. Civ. P. 26(b)(4)*." *See* Mot., Baim Aff., Exh. "N." In other words, Defendant is in fact "barking up the *right* tree," but because Plaintiff has no answer for Defendant's showing regarding Rule 26(b)(4), Plaintiff has now jumped to another tree.

Perhaps this sudden shift is best explained by a key document belatedly produced after this Motion was filed. Specifically, on October 3, 2012, Plaintiff's counsel suddenly "located" (in his own inbox) and produced a recent exchange among his own law firm and PWC, dated June 5, 2012, in which PWC is retained *for the first time* as a testifying expert. *See* Supplemental Affidavit of Jason B. Baim ("Supp. Baim Aff."), **Exhibit "Q."** Notably, one of the tasks identified in this June 2012 email exchange is for PWC to prepare a real Rule 26 expert report that is based, in part, on PWC's prior audit work and on further discovery. *Id.*

This new retainer is nothing short of a full-blown admission that (a) PWC was *never* Plaintiff's testifying expert during the audit, and (b) the audit report was never a testifying "expert report" under Rule 26. It is not surprising, then, that Plaintiff omits any mention of this retainer, and tersely dismisses Defendant's entire Rule 26(b)(4) analysis as "irrelevant" despite having objected on this basis in its last meet and confer letter. This new Exhibit is also a stark

3

reminder of Plaintiff's evasive tactics here, proving that Plaintiff's counsel **never** had a good faith basis for asserting Rule 26(b)(4) protections in its August 24, 2012 meet and confer letter.

### B. RULE 26(b)(3) WORK PRODUCT PROTECTIONS DO NOT APPLY

Despite Plaintiff's latest maneuver to try to evade this discovery, Defendant showed in the Motion that Rule 26(b)(3) work product protection also does not apply to this fact situation. (Mot. at 13-14.) Specifically, Defendant showed that (i) Plaintiff *always* presented PWC as an "independent" auditor retained by CDP (not counsel) to exercise rights in the contract, not for litigation, (ii) PWC's report expressly confirms that it is "intended solely for the management and Board of Directors of CDP for their internal use and benefit" (not for litigation or for counsel); and (iii) Plaintiff seeks reimbursement for the audit, thereby conceding its belief that these are strictly business costs for which damages may be sought. Based on this record (which remains unexplained and undisputed), PWC's audit should not receive work product protection under the First Circuit's narrow test for protecting only materials specifically "prepared for use in litigation." *U.S. v. Textron Inc. and Subsidiaries*, 577 F.3d 21, 29-30 (1st Cir. 2009).

### Plaintiff's Opposition Argument:

Plaintiff devotes nearly 10 pages of the Opposition and all of Mr. Welsh's Affidavit to establishing a single irrelevant fact that is not even disputed by Defendant: namely, that litigation was a "possibility" at the time of PWC's retention for an audit. On this basis, alone, Plaintiff concludes that all PWC materials must have been prepared "*because of* the prospect of litigation," and therefore are protected by the work product doctrine. Opp. at 2-10; 11-12.

### Reply to Plaintiff's Contentions:

As a threshold matter, Plaintiff uses the wrong legal standard. Based on a 2002 case, Plaintiff argues that it must only show documents were prepared "*because of* the prospect of

litigation." *Id.* at 11.  But, in 2009, the First Circuit rejected this test for a narrower test that affords protection to "only work done in anticipation of or for trial," and not to materials assembled in the ordinary course of business even if prepared by lawyers or regarding subjects that "might conceivably be litigated."  *U.S. v. Textron*, *supra*, 577 F.3d at 29-30.[1]  Under this stricter standard, the work product doctrine plainly does not apply – in fact, as Defendant has shown, the doctrine is inapplicable under either standard in light of the record in this case.

In particular, Plaintiff's entire argument is premised on whether litigation was "possible," and whether *Defendants* knew it was possible.  But this, alone, does not establish that PWC truly prepared its audit "for use in litigation."  Rather, it is the evidence of *Plaintiff's* and *PWC's* actions concerning PWC's role, and not Defendant's *outsider* perspective on such "possibilities," that proves the truth or falsity of this point.  It is, thus, far more relevant to ask the following:

- If, as Plaintiff contends, PWC was preparing this audit for litigation, why did Plaintiff and PWC consistently represent to Iron Mountain *and to this Court* (until this discovery dispute) that PWC was retained *by CDP* (not its counsel) as an "independent" auditor for purposes of exercising audit rights under the contract?

- If PWC truly prepared its report for litigation, why did PWC expressly write in the report, *months before any litigation*, that it was "intended solely for the management and Board of Directors of CDP for their internal use and benefit," instead of denoting it as work product for use by counsel for litigation purposes?  Is Plaintiff now suggesting that PWC was lying at the time it wrote this?

- If Plaintiff truly believed the PWC audit was the work product of its litigation "expert" rather than an ordinary and compensable business expense, why did Plaintiff seek reimbursement for the audit in its Complaint?

This evidence sits undisputed and unexplained in the record, and forcefully contradicts any notion that the audit was "prepared for litigation," as required under *Textron* (or even "*because of* the prospect of litigation" under the old test).  Rather than explain *any* of these facts,

---

[1] *See*, *e.g.*, *Smith v. Life Investors Ins. Co.*, 2009 WL 3364933, *7 (W.D. Penn. 2009) (recognizing that, in *Textron*, "the First Circuit recently rejected the 'because of litigation' test … in favor of a narrower 'prepared for litigation' test")

Plaintiff brushes it all aside with the claim that there is "nothing sinister" about exercising a contract right while litigation is possible. Opp. at 14. But, in fact, there is something quite sinister about lying to Iron Mountain as to the nature of PWC's role and retention in order to gain access to sensitive information, or reversing course on all prior representations and positions in order to evade basic discovery. Nor does the mere possibility of litigation lessen Plaintiff's apparent deception or render any less true Mr. Frischling's testimony that he *never* would have given such access to PWC had he known PWC was a hired gun of litigation counsel. Above all, it does not excuse Plaintiff's failure to address *any* of this compelling evidence that is plainly at odds with applying the work product doctrine under any standard.[2]

### C.    "DERIVATIVE" ATTORNEY-CLIENT PRIVILEGE DOES NOT APPLY

Defendant also showed in the Motion that the attorney-client privilege is likewise inapplicable to communications with PWC. As shown therein, communications with a third party agent like PWC are not attorney-client privileged unless the third party agent is employed to assist a lawyer in rendering legal advice, ***and*** (i) the communications are "necessary for the effective consultation," (ii) the third party plays "an interpretive role" in "translating" data between client and attorney, and (iii) the communication is made for purposes of rendering legal advice, not business advice. Motion at 14-15. Here, Plaintiff does not and cannot show that any of the communications with PWC were "necessary" – or even the least bit useful – to "interpret"

---

[2]    Even if the work product doctrine were applicable, it is only a *qualified* immunity that is overcome by a showing of "substantial need" for materials to prepare one's case where such materials (or substantial equivalent) cannot be obtained by other means without undue hardship. Fed. R. Civ. P. 26(b)(3)(ii). Such need cannot be disputed here. Moreover, when a consulting expert "switches hats" to become a testifying expert, the privilege protects "only those materials generated or considered uniquely in the expert's role as consultant," and "[a]ny ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking disclosure." *E.g., Employees Committed for Justice v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008). Here, Plaintiff cannot credibly claim *any* portion of PWC's audit was generated "uniquely" in a consulting role and will not be "considered" in its testifying role (as shown by June 2012 retention (**Exh. Q**) entails PWC "updating" its audit.

or "translate" legal advice regarding royalties owed because, months before retaining PWC, Plaintiff had *already proposed* to Iron Mountain the same royalties theory that (not coincidentally) re-appeared *months later* as the basis for all of PWC's "findings."

**Plaintiff's Opposition Argument:**

In its Opposition, Plaintiff ignores the three-step analysis recently laid out by this district court in *Dahl* and *Banco do Brasil*, and instead argues (contrary to such law) that its retention letter with PWC, by itself, is conclusive. Opp. at 15-16. Specifically, Plaintiff argues that because PWC was expressly retained to assist counsel in providing legal advice, all of the withheld communications involving PWC necessarily fall within the attorney-client privilege. Plaintiff further contends that Defendant "failed to cite a single case" in support of the principle that a retainer agreement, by itself, is not conclusive. *Id.* at 16.

**Reply to Plaintiff's Contentions:**

Plaintiff has misstated the law. Contrary to Plaintiff's statement, *all* of the cases cited by Defendant make clear that retention, by itself, is only the first step of this analysis. Motion at 14-15. Each of the cases stands on the basic principle that communications with a third party agent are not attorney-client privileged *unless* the third party agent is first "employed to assist a lawyer in rendering legal advice." *Dahl v. Bain Capital Partners*, 714 F.Supp.2d 225, 227 (D. Mass. 2010). Thus, the cases recognize a threshold "retention" requirement. *Id.* But Plaintiff ignores that these courts go on to explain in each case that, even with this retention, the "derivative" privilege is applicable only in limited circumstances where the additional requirements described above are met. this district court reiterated this analysis in *Banco do Brasil v. Wash. Street Corp.*, 2012 WL 1247756, *7-8 (D. Mass. 2012), noting that retention is only the "initial" part of the analysis: "The circumstances under which the derivative attorney-client privilege attaches is

7

limited.  ***As an initial matter***, the third party must be 'employed to assist a lawyer in rendering legal advice.'  [Citation.]  ***In addition***, in order for the privilege to apply, the third party's presence must be 'necessary, or at least highly useful, for the effective consultation" and "applies only to communications in which the third party plays an interpretative role" in "translating" information between the client and attorney.  *Id.* (emphasis added).

Besides misstating the law, Plaintiff also fails to make any evidentiary showing as to how communications involving PWC possibly satisfy these requirements under *Dahl* and *Banco do Brasil*.  At best, Plaintiff half-heartedly states that PWC's assistance was "critical" to Plaintiff's *counsel's* understanding of a "highly technical computer software field."  But this conclusory statement is not nearly enough, nor is it even credible given Plaintiff's boasts of having "more than three decades of experience in the computer software space."  Opp. at 13.  More telling, however, Plaintiff does not even attempt to reconcile this empty statement with the compelling record put forth in the Motion which shows Plaintiff had ***already*** formulated and proposed the same 10% royalty theory on all Iron Mountain products ***months before*** PWC was retained to re-package this same theory as its own "findings" in a supposedly "independent" audit report.  In other words, Plaintiff cannot show that PWC was "necessary" to explain or "interpret" anything regarding the alleged harm to Plaintiff because, in fact, such theories and information flowed the other way – *from* Plaintiff and its counsel *to PWC* for subsequent adoption in its report.  Plaintiff makes no attempt to dispute this fact.  Accordingly, Plaintiff does not *and cannot* show that the "derivative attorney-client privilege" applies to the improperly withheld PWC communications.

### D. <u>ALL PRIVILEGES WERE VOLUNTARILY WAIVED BY PLAINTIFF</u>.

Above all, even if Plaintiff could overcome the significant hurdle of showing that privileges apply to the PWC audit, Defendant conclusively established in the Motion that *all* such privileges were waived long ago on either of two grounds, because: (a) Plaintiff placed

8

PWC's audit and "independence" at issue by alleging claims based on the audit and PWC's supposed "independence"; and (b) Plaintiff voluntarily provided its adversary with a copy of the claimed privileged material. Unable to squarely address either of these longstanding principles or their supporting authorities, Plaintiff (again) resorts to distorting the law and the record.

**Plaintiff's Opposition Argument #1:**

As an initial matter, Plaintiff argues that an implied subject matter waiver should not occur for no reason other than such a finding is "rare." (Opp. at 16.)

**Reply to Plaintiff's Contention #1:**

This is misleading and irrelevant. The "rarity" refers only to the exceptional *factual* circumstances that give rise to an implied waiver. In other words, implied subject matter waiver cases are relatively "rare" because it is unusual for a litigant (such as CDP) to affirmatively place claimed privileged materials directly at issue in a Complaint, thereby rendering all related and underlying materials to be relevant and discoverable under Rule 26(b)(1). Where this unique fact pattern exists, however, Plaintiff cannot dispute that courts across the country (both state and federal) *uniformly and routinely* find an implied waiver – in fact, it would be a "rare" case (and contrary to law) to ***not*** find an implied subject matter waiver under such circumstances.

**Plaintiff's Opposition Argument #2:**

Next, Plaintiff misleadingly analyzes the entire waiver issue within the wrong context of "testifying expert discovery." Specifically, Plaintiff argues that no "fairness concerns" exist for purposes of imposing implied waiver because Plaintiff has already produced a copy of PWC's "expert report" and "over 500 pages" of materials that it is required disclose under Rule 26(b)(4) relating to such "expert report." Plaintiff, therefore, concludes that the overarching purpose of

9

testifying expert discovery under Rule 26(b)(4) has been met because Defendant will have "ample opportunity" to probe the basis of the testifying expert's opinions. Opp. at 17-19.

### Reply to Plaintiff's Contention #2:

Plaintiff's entire argument is a fallacy. This is **not** a motion to compel "*testifying expert discovery*" under Rule 26(b)(4), as Plaintiff would have this Court believe. This Motion concerns Defendant's *first* set of document requests that seek basic fact discovery relevant to the facts and information **expressly alleged** in Plaintiff's Complaint. As shown in the Motion, the law is clear that Plaintiff must turn over a *complete* record regarding such information that it has put at issue. Because Plaintiff has no answer for this basic principle or the supporting case law in the Motion, Plaintiff ignores it all and, instead, seeks to improperly steer this waiver analysis into the *only* context where Plaintiff conceivably could appear to be "fair" and compliant. In other words, Plaintiff is *only* able to suggest a lack of prejudice within the context of "testifying expert discovery" under Rule 26(b)(4), and therefore attempts to manipulate the analysis to this end. But, as shown in the Motion, the Rule 26(b)(4) expert discovery rules are irrelevant here. As shown, the record is unequivocal that PWC was *never* a testifying expert during the audit and PWC's audit is not a Rule 26 testifying expert report by any stretch – all of which is further confirmed by the newly produced retention letter showing that, in **June 2012**, PWC was retained for the first time to testify and prepare an expert report. *See* Supp. Baim Aff., Exh. "Q."

In sum, all of this talk about "testifying expert discovery" rules and a purported "lack of prejudice" because Plaintiff produced a partial record in compliance with those irrelevant rules, is a contrived diversion. As shown in the Motion, the **only** pertinent inquiry here is whether Plaintiff placed the claimed privileged materials at issue in a judicial proceeding, and thereby unfairly seeks to use the privilege as both a sword and shield. This fact is not disputed and, as

the First Circuit made clear in *In re Keeper*, is decisive: "'[t]he courts have identified a common denominator in waiver by implication: in each case, the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act, and the court found that to allow the privilege to protect against disclosure of that information' would have been unfair to the opposing party." *In re Keeper*, 348 F.3d 16, 24 (1st Cir. 2003) (internal citation omitted). Importantly, the First Circuit further held that a finding of unfair "prejudice" is a foregone conclusion when, as here, a party places protected information at issue in a judicial proceeding: "In the former setting, the likelihood of prejudice looms: once a litigant chooses to put privileged communications at issue, only the revelation of all related exchanges will allow the truth-seeking process to function unimpeded." *Id.*

Plaintiff has no answer for this basic rule of law, and therefore pretends that no "fairness" concerns exist because it has produced "over 500 pages" pertaining to the audit – as if this *volume* somehow means there are no other relevant materials being improperly withheld or that Defendant is not prejudiced by having this *partial* record of the audit work that forms the basis for Plaintiff's $23 million claim. Plaintiff also cites to irrelevant case law where, unlike here, the party did ***not*** deliberately disclose protected materials in an attempt to gain a tactical advantage. But, here, Plaintiff has done exactly that. Plaintiff alleges claims *based on* PWC's findings and investigation, and then selectively produced only a "favorable" fragment of information pertaining to the audit (basically, the report and all exhibits that Plaintiff hand-fed to PWC for its report), while withholding the remaining "unfavorable" portions of the record. By any notion of fairness, Defendant must be entitled to a full record to test the validity of Plaintiff's allegations.

In addition, Plaintiff ignores the fact that it has placed PWC's "independence" directly at issue by seeking reimbursement for PWC's supposedly "independent" audit work as part of its

damages claim – which also contradicts its current position.  Defendant cannot be denied discovery bearing on this issue of whether PWC truly was "independent," as alleged, or was *steered* to its conclusions by Plaintiff, as indicated by the ***undisputed*** chronology established by Mr. Frischling's Affidavit and Plaintiff's own Exhibit "O."  This, too, is ignored by Plaintiff.

Based on all of the foregoing, an implied waiver is mandated.  Defendant need not trust the credibility of Plaintiff's allegations on their face, but is entitled to a *complete record* to test the veracity and genuineness of the allegations.  It would be highly prejudicial to deny Defendant the full picture regarding assertions of fact that Plaintiff intends to use to influence a trier of fact, particularly given the suspect nature of PWC's seemingly preordained "findings" and Plaintiff's continual shifts to evade this discovery – clearly, Plaintiff is hiding something.  In sum, this is a definitive case where implied waiver is necessary to "allow the truth-seeking process to function unimpeded."  *Id.*  This is the fundamental rule of law everywhere, not just in Massachusetts.[3]

**Plaintiff's Opposition Argument #3:**

Next, Plaintiff argues that it "cannot possibly be the rule" and "Defendants have cited no authority" for the "novel theory" that "materials prepared in anticipation of litigation by an

---

[3]   *E.g., In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (party cannot affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party); *In re Sealed Case*, 676 F.2d 793, 812, 818 (D.C. Cir. 1982) (selective disclosure to gain advantage in litigation waives privilege as to all other communications; waiver of work product privilege serves as waiver of attorney-client privilege since coverage and purposes of attorney-client privilege are completely subsumed into work product privilege; *Frontier Refining Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998) ("litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion"); *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 306-07 (6th Cir. 2002); *Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) (if employer asserts affirmative defense based on adequacy of pre-litigation investigation, it waives protections with respect to documents reflecting that investigation); *Gruss v. Zwirn*, 276 F.R.D. 115, 132-33 (S.D.N.Y. 2011) ("at issue" waiver results where party uses an assertion of fact to influence the decisionmaker while unfairly denying its adversary access to privileged material potentially capable of rebutting the assertion).

independent expert like PWC are somehow subject to *less* protection than the same material prepared by such an expert *after* litigation has commenced." (Opp. at 19.)

### Reply to Plaintiff's Contention #3:

Again, Plaintiff ignores the record to create an argument. The doctrines of implied waiver and waiver by disclosure are not "novel theories." These are well-settled principles, as shown by ample authority cited in the Motion and herein. Plaintiff's inference that materials prepared in anticipation of litigation cannot receive less protection than the same material prepared after litigation, while creative, ignores the key facts which lead to this result: namely, that Plaintiff *chose* to strip the claimed privileged materials of all previous protections by (i) voluntarily providing a copy of PWC's audit to Defendant, and (ii) placing the audit investigation and PWC's "independence" *at issue* in its Complaint. Under these circumstances, it is a fundamental (not "novel") rule of law that Plaintiff has waived all privilege protections.[4]

### Plaintiff's Opposition Argument #4:

Plaintiff concludes by characterizing this fundamental principle of implied waiver as "nonsensical," stating that "Defendants have not (and cannot) cite any case standing for the nonsensical proposition that the attorney-client privilege or work product doctrine is waived by alleging damages" based on a third party consultant's report or analysis. Opp. at 20.

---

[4] *See* Motion at 16-20; Footnote 3, *supra*. *See also Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54-56 (S.D.N.Y. 1999) (privileges waived where published final report placed accuracy of expert's data and validity of analyses at issue); *Volpe v. US Airways, Inc.*, 184 F.R.D. 672, 673 (M.D. Fla. 1998) (by relying on investigation as affirmative defense to liability, employer waived any privilege to protect documents which comprised the investigation; plaintiff is entitled to test "the *bona fides* of the investigation"); *Worthington v. Endee*, 177 F.R.D. 113, 116-118 (N.D.N.Y. 1998) (affirmative defense based on pre-litigation investigation put "at issue" the report and all underlying documents, and thereby waived any privilege).

**Reply to Plaintiff's Contention #4**:

Again, Plaintiff's statement is not true. Defendant has cited several authorities directly on point for the established principle that a party impliedly waives any protections by affirmatively using such protections as a sword and shield, such as *PolyMedica*, *AMCA Int'l Corp.*, *Bear Republic*. Motion at 16-20. Such cases involved situations closely resembling this one, but Plaintiff chose not to address them. Moreover, there is a mass of authorities where implied waiver is found because one party is asserting or defending a claim for damages based on a third party's pre-litigation investigation or report. Defendant previously did not see the need to inundate the Court with case citations standing for this basic principle, but Plaintiff's rhetoric and misstatements have necessitated a reference to the small sampling below.[5]

### III. CONCLUSION

For all of the foregoing reasons, and those set forth in the Motion, Defendant respectfully requests that the Court grant their Motion to Compel and order Plaintiff to produce all PWC-related materials and communications being improperly withheld, together with such additional or alternative relief as the Court deems appropriate.

---

[5] *E.g.*, *Granite Partners*, *supra*, 184 F.R.D. at 54-56 (privilege waived where published final report placed accuracy of expert's data and validity of analyses at issue); *Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 3923092, * 10-11 (D. Col. 2010) ("justice does not permit one side to inform and facilitate a damages assessment, purposed for reliance of the court, without permitting its opponent access to the materials and process underlying the assessment"); *Occidental Chemical Corp. v. OHM Remediation Services Corp.*, 175 F.R.D. 431, 435-36 (W.D.N.Y. 1997) (work product protection waived for information contained in documents prepared by consultant in anticipation of litigation because party's claim for contractual damages is based on the information); *Volpe*, *supra*, 184 F.R.D. at 673 ("if defendant intends to rely on the investigation as a defense, plaintiff is entitled to test the *bona fides* of the investigation"); *Walker*, *supra*, 227 F.R.D. at 535 (N.D. Cal. 2005) (where adequacy of pre-litigation investigation asserted as affirmative defense, attorney-client privilege and work product doctrine waived as to documents underlying investigation); *Worthington*, *supra*, 177 F.R.D. at 116-118 (by asserting affirmative defense based on pre-litigation investigation, defendants put "at issue" the entire investigatory report and underlying documents, and thereby waived any privilege).

Respectfully submitted,

AUTONOMY CORPORATION LIMITED; IRON MOUNTAIN, INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; and CONNECTED CORPORATION

 */s/ Scott McConchie*
Daniel P. Tighe (BBO # 556583)
*dtighe@gtmllp.com*
Scott McConchie (BBO # 634127)
*smcconchie@gtmllp.com*
GRIESINGER, TIGHE & MAFFEI, LLP
176 Federal Street
Boston, Massachusetts 02110-2214
(617) 542-9900
(617) 542-0900 (fax)

Gregory L. Doll, *pro hac vice*
Jason Baim, *pro hac vice*
Doll Amir & Eley LLP
1888 Century Park East, Suite 1850
Los Angeles, CA 90067
310.557.9100
*gdoll@dollamir.com*
*jbaim@dollamir.com*

Dated:  October 29, 2012

### Certificate of Service

I, Scott McConchie, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 29, 2012.

 */s/ Scott McConchie*
Scott McConchie