UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLUMBIA DATA PRODUCTS, INC., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>AUTONOMY CORPORATION )<br>LIMITED, et al., )<br>)<br>Defendants. ) | CIVIL ACTION<br>NO. 11-12077-NMG |

**MEMORANDUM OF DECISION AND ORDER
ON DEFENDANT'S MOTION TO AMEND ANSWER**

June 28, 2013

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Columbia Data Products, Inc. ("CDP"), has brought this action against Autonomy Corporation Limited ("Autonomy") and its predecessors, Iron Mountain Incorporated and Iron Mountain Information Management, Inc. (collectively, "Iron Mountain"),[1] alleging that the defendants wrongfully copied and shipped CDP's computer software, breached the terms of the parties' software license agreement ("License Agreement"), and engaged in various misrepresentations aimed at covering up

---

[1] CDP originally named as defendants Autonomy Corporation PLC., Iron Mountain, Inc., Iron Mountain Information Management, Inc., and Connected Corp. However, pursuant to an Assented-To Motion to Correct Party Names and Caption, the defendants' names have since been changed to reflect the appropriate entities.

their improper conduct. Autonomy has denied all liability and asserted various counterclaims against CDP.

This matter is presently before the court on "Defendants' Motion for Leave to Amend Answer to Add Counterclaim and Affirmative Defenses." (Docket No. 77). By this motion, Autonomy is seeking to add a defense that expressly sets forth the "limitation of liability" clause contained in the License Agreement, an amendment which CDP does not oppose and is therefore allowed. In addition, Autonomy is seeking to add a claim of offset/recoupment as a counterclaim and/or affirmative defense. This claim is based on Autonomy's alleged overpayment of amounts due under a separate LiveVault Agreement between the parties. CDP opposes this proposed amendment, claiming that Autonomy delayed asserting the claim without cause, that the amendment would unduly prejudice CDP as discovery is drawing to a close, and that the amendment would be futile.

After careful consideration of the pleadings and arguments of counsel, the motion to amend is ALLOWED. Payment due under the LiveVault Agreement has been an issue between the parties for years. CDP has been on notice throughout the discovery period that Autonomy intended to assert a claim of overpayment if it was able to prove this claim, and that Autonomy's ability to prove the claim had been hampered by the various mergers and acquisitions it had undergone over the years. In fact, both parties had filed written discovery and scheduled depositions intended to address this issue before the close of discovery. CDP withdrew its discovery requests, however, when it learned that Autonomy intended to assert the alleged overpayment as a separate counterclaim and not

just as an excuse for its failure to pay amounts allegedly due under the License Agreement.

As detailed more fully herein, this court concludes that Autonomy did not unduly delay its assertion of this claim, that CDP will not be prejudiced by the amendment, and that the amendment is not futile. Therefore, the motion to amend (Docket No. 77) is allowed. To the extent that additional time is needed to complete discovery on this issue, the fact discovery deadline is extended to August 2, 2013.[2] The remaining pre-trial and trial deadlines remain in effect.

## II.  STATEMENT OF FACTS

In this action, CDP is seeking $23 million in royalties it claims the defendants owe under a License Agreement CDP entered into in March 2005 with Connected Corporation, which was subsequently acquired by an Iron Mountain entity and then by Autonomy. In addition to this License Agreement, in or around December 2004, CDP entered into an agreement with LiveVault Corporation, pursuant to which LiveVault was to pay royalties to CDP for software embedded into its LiveVault 5 backup product. LiveVault was subsequently acquired by an Iron Mountain entity and then by Autonomy as well. The defendants contend that they overpaid CDP $1.5 million in royalties under the LiveVault Agreement. They are seeking to add a counterclaim and/or affirmative defense for the purpose of offsetting or recouping this amount.

---

[2] The District Judge to whom this case is assigned has approved this extension of fact discovery.

**Existing Discovery Schedule**

As noted above, the License Agreement at issue in CDP's complaint was entered into between CDP and Autonomy's predecessor, Connected Corporation. As detailed in the parties' Joint Motion to Amend Scheduling Order dated May 8, 2013, which resulted in an extension of fact discovery to July 15, 2013, the corporate history of Autonomy is complex, and has made discovery challenging in this case. Thus, the parties asserted:

> the merger, purchase, and sale of certain entities affiliated with Defendants has complicated and delayed the retrieval and production of documents responsive to CDP's requests. Shortly after CDP entered into the underlying license agreement with Connected Corporation ("Connected"), Connected was purchased by and thereafter merged into Iron Mountain Information Management. In 2011, Iron Mountain's digital division, which included the Connected assets and liabilities, was sold to Autonomy Corporation Limited ("Autonomy"). In 2012, Hewlett Packard purchased Autonomy. The various mergers and acquisitions involving Connected have added complexity to Defendants' efforts to collect and produce documents.

(Docket No. 76 at ¶ 2).

As a result of these difficulties, the defendants were unable to begin a substantial production of financial records with backup data until March 26-27, 2013, and the document production is continuing. (See Baim Aff. (Docket No. 79) at ¶ 24; Autonomy Reply (Docket No. 104) at 15-16). The parties presently have a number of depositions scheduled. The existing discovery schedule calls for the completion of fact discovery by July 15, 2013, expert designations and disclosures by September 13, 2013, completion of expert discovery by November 22, 2013, and the filing of dispositive motions by

December 20, 2013.  (Docket Nos. 76, 88).  A Final Pretrial Conference is presently scheduled for March 26, 2014, and trial is scheduled to commence on April 7, 2014.  (Docket No. 51).

## History of the LiveVault Dispute

While the parties dispute whether the License Agreement and LiveVault Agreement are interconnected, an issue which the court does not have to resolve at this time, the evidence before the court is that the parties had attempted to resolve all of their outstanding issues before suit was commenced.  For example, on November 19, 2010, CDP's principal, Rex Walsh, sent Iron Mountain's in-house counsel an email itemizing "the universe of buckets we are potentially in[.]"  (Baim Aff. Ex. F at 1).  While that email did not specifically reference any claim by Iron Mountain of overpayment, CDP did note that payments due under both the LiveVault Agreement and the Connected License Agreement had to be resolved.  (See id.).  Thus, the fact that payments under the LiveVault Agreement needed to be reconciled in order to fully resolve the issues between the parties was known to CDP even before the litigation was commenced.

During initial discovery exchanges, it became clear that Autonomy believed that there had been overpayments made under the LiveVault Agreement, but that it lacked sufficient information to assert this as a claim.[3]  For example, in its August 29, 2012

---

[3] This court does not find persuasive Autonomy's contention that CDP should have been aware of the alleged overpayment claim in light of the Thirty-Eighth Affirmative Defense raised by Autonomy in its original answer entitled "Offset/Setoff/Recoupment."  (Baim Aff. Ex. G at 17).  Therein, Autonomy asserted "Plaintiff is barred from any legal or equitable relief under each

response to CDP's interrogatories, Autonomy wrote that "Defendants believe there may be an offset of any royalties potentially due to CDP, but Defendants' investigation into this issue is continuing and incomplete." (Baim Aff. Ex. J at 15). CDP, through counsel, then asked for "the basis for Defendants' assertion that they may be entitled to an offset[.]" (Baim Aff. Ex. K at ¶ G). By letter dated November 8, 2012, Autonomy's counsel wrote:

> As to the source of offset, you are likely aware of your clients' emails and spreadsheets regarding settlement proposals in 2010 that acknowledge a potential overpayment of royalties on the LiveVault product.

(Baim Aff. Ex. L at 2-3).

The record further reflects that the alleged overpayment under the LiveVault Agreement remained an issue in the litigation. Thus, on March 20, 2013, Autonomy sent CDP a proposed 30(b)(6) deposition notice which included the following category:

> 13. Royalties that You received from Defendants relating to the LiveVault product, including, without limitation, the extent to which You received payments in excess of the amount due to be received under Your agreement with Defendants.

(Baim Aff. Ex. M at 6). One week later, on March 27, 2013, CDP amended its outstanding 30(b)(6) deposition notice to add the following category:

---

of the purported causes of action in the Complaint to the extent Defendants have offsetting claim(s), and any liability to Plaintiff, which Defendants hereby deny, must be reduced under the doctrines of offset, setoff and/or recoupment." (Id.). In this court's view, there is nothing therein which would put CDP on notice of a dispute concerning the LiveVault Agreement, much less a claim of overpayment thereunder. Moreover, Autonomy withdrew this defense when faced with CDP's challenge to the lack of specificity therein.

>32. Royalties relating to the LiveVault product, including, without limitation, the basis for Defendants assertion that CDP received payments in excess of the amount due to be received under its agreement with Defendants.

(Baim Aff. Ex. N at 10). Eventually, it was agreed that CDP would take the deposition of the defendants' designee on June 17 or 18, 2013. (Baim Aff. ¶ 17). Meanwhile, CDP filed interrogatories and document requests on April 24, 2013 relating to the "Defendants' assertion that CDP received payments in excess of the amount due to be received under any agreement between CDP and LiveVault." (Baim Aff. Ex. R at Interrog. 20; Ex. S at Doc. Req. 76-79). At no time during this period did CDP contend that discovery relating to payments under the LiveVault Agreement were beyond the scope of the issues raised in this litigation.

By email dated May 7, 2013, counsel for Autonomy requested that counsel for CDP assent to an amendment to Autonomy's answer and counterclaim to "reinsert our setoff/recoupment defense" "based on what appears to be a substantial overpayment of LiveVault royalties." (Baim Aff. Ex. A). According to Autonomy, "we've more recently learned through financial discovery and investigation" that there has been "a substantial overpayment of LiveVault royalties." (Id.). Autonomy further agreed to supplement its answers to interrogatories if CDP so desired. (Id.). By email dated May 9, 2013, CDP refused to consent. (Baim Aff. Ex. B). On May 17, 2013, CDP withdrew its outstanding discovery relating to LiveVault. (Baim Aff. Ex. V). Despite this purported withdrawal,

Autonomy is continuing to produce documents relevant to its claim. (See Baim Aff. ¶ 24).

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Standard of Review

As an initial matter, the parties disagree as to whether the liberal amendment standard of Fed. R. Civ. P. 15 applies to the instant motion to amend or whether Autonomy must establish "good cause" for the proposed amendment under the stricter standard set forth in Fed. R. Civ. P. 16. Of critical importance to this analysis is whether the court had established a binding schedule for amended pleadings in its scheduling orders. As detailed below, this court is unable to determine whether the parties had understood that a finite schedule for amending pleadings had been set by the court. However, this court also concludes that the proposed amendment is warranted under either standard.

The decision whether to grant a motion for leave to amend falls within the trial court's discretion. Sheehan v. City of Gloucester, 321 F.3d 21, 26 (1st Cir. 2003). "Leave to amend under Rule 15 'is freely given when justice so requires' absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive." Transwitch Corp. v. Galazar Networks, Inc., 377 F. Supp. 2d 284, 290 (D. Mass. 2005) (quotations and citation omitted), and cases cited. However, once a scheduling order establishing a cut-off date for amendments has been set, it may be

"modified only for good cause and with the judge's consent" pursuant to Fed. R. Civ. P. 16(b)(4).  See Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) ("Once a scheduling order is in place, the liberal default rule is replaced by the more demanding 'good cause' standard of Fed. R. Civ. P. 16(b).").  This standard "emphasizes the diligence of the party seeking the amendment[ ]" and "[p]rejudice to the opposing party remains relevant but is not the dominant criterion."  O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004).

In the instant case, at the scheduling conference held before the District Judge on March 28, 2012, the parties agreed to a number of deadlines.  In particular, a trial date was set for October 7, 2013, and the parties agreed that any amendments to pleadings would be due by July 31, 2012.  (See 3/28/12 Docket Entry).  All subsequent extensions were requested after the July 31, 2012 date had passed, and did not mention any dates for amending the pleadings.  (See, e.g., Docket No. 40 requesting six month extension of deadlines and resulting in a trial date of April 7, 2014 per Docket No. 51; Docket No. 76 requesting extension of discovery deadlines but not trial date).  Nevertheless, when CDP moved to amend its complaint on January 14, 2013, it proceeded under Fed. R. Civ. P. 15(a) even though the July 31, 2012 date for amended pleadings had long since passed.  (See Docket No. 68).  The amended complaint added a new copyright to CDP's claim of copyright infringement, and CDP argued that the amendment would not prejudice the defendants, thereby applying the Rule 15 liberal amendment standard.  (Id. at ¶¶ 2, 3).  The defendants assented to the amendment.  Thus, it appears that prior to the instant

motion, the parties were in agreement that the scheduling orders in effect did not preclude consideration of amendments to the pleadings under Fed. R. Civ. P. 15.

For the reasons detailed below, this court concludes that the proposed amendment is appropriate under either standard. Given the parties' history, however, and the fact that "undue delay" is a consideration under either standard, it would have been more consistent for CDP to have allowed Autonomy to file its motion to amend under Rule 15 without dispute.

### B. Undue Delay

CDP contends that Autonomy's undue delay in asserting its claims based on alleged overpayments under the LiveVault Agreement requires that the motion to amend be denied under Fed. R. Civ. P. 16. This court finds that whether the motion to amend is evaluated under Fed. R. Civ. P. 16 or 15, Autonomy has been sufficiently diligent in bringing the issue of overpayments under the LiveVault Agreement into the litigation so that its motion to amend should be allowed.

There is absolutely no evidence that Autonomy intentionally delayed bringing this claim. The difficulties Autonomy has faced in locating and analyzing its documents is well-documented and was well-known to CDP. Autonomy made it clear both in pre-litigation settlement discussions and throughout the discovery period that an accounting under the LiveVault Agreement was necessary, and that it believed that there had been overpayments made to CDP. Autonomy's request that CDP produce a 30(b)(6) witness on the issue of LiveVault payments in March 2013 coincided with its production of

financial records and backup data.  Moreover, as Autonomy has explained, its analysis of the PriceWaterhouseCoopers documents, which were produced on January 31, 2013 and February 19, 2013, were very important for its ability to formalize its claim of overpayment.  (See Autonomy Reply (Docket No. 104) at 14-15).  The record does not support CDP's contention that Autonomy was dilatory.

CDP's claim that Autonomy's motion should be denied because of its "repeated failure to cure deficiencies by amendments previously allowed" also is not persuasive.  (CDP Opp. (Docket No. 89) at 12 (internal citation omitted)).  As Autonomy argues, the amended answers filed by the defendants have, at least in part, tracked CDP's corrections and amendments to its complaint.  (See Autonomy Reply at 7).  In any event, the existence of prior amendments in the instant case does not negate the fact that CDP was moving diligently to develop a factual basis for a claim that all the parties knew was lurking.  This court concludes that the motion to amend was timely.

### C. <u>Undue Prejudice</u>

Despite its protestations to the contrary, this court concludes that CDP will not be prejudiced if the amendment is allowed.  As an initial matter, the issue of potential overpayments under the LiveVault Agreement has long been an issue between the parties, and has been a significant enough issue in this litigation so that it has been the subject of discovery requests during the agreed-upon discovery period.  The fact that Autonomy raised the overpayment as an excuse for non-payment of amounts allegedly due under the License Agreement, as opposed to an express claim for recoupment and/or setoff, does

not alter the scope of relevant factual discovery. CDP "cannot reasonably be surprised" at Autonomy's articulation of its overpayment defense, and its claim of prejudice is not persuasive. See Jillson v. Vt. Log Bldgs., Inc., 857 F. Supp. 985, 987 (D. Mass. 1994) (third-party plaintiff would not be prejudiced by an amendment asserting an affirmative defense where it "has long been an issue in this case."). This is especially true where, as here, Autonomy has responded to some discovery on the issue already, and is in the process of producing additional information.[4] See Angela Adams Licensing LLC v. Wal-Mart Stores, Inc., No. 2:11-cv-5-GZS, 2012 WL 1820932, at *1 (D. Me. May 18, 2012) (claim of prejudice by addition of affirmative defense "would be unlikely to succeed" where plaintiff had already sought discovery on the issue).

It also does not appear that any depositions will have to be retaken, although even some additional deposition testimony from a previously deposed witness would not be unduly burdensome. As of the date of the parties' filings, CDP had taken five depositions, and none of them was of the individual designated by Autonomy on the topic of payments under the LiveVault Agreement. To the extent that new fact witnesses will need to be deposed, the brief extension of time to conclude fact discovery should be sufficient. The issues raised by the proposed amendment are limited in scope and are discrete.

---

[4] The parties dispute whether Autonomy has produced most of the relevant documents in response to other requests by CDP which were not directed specifically to the LiveVault Agreement. That issue, however, does not need to be resolved in light of the specific discovery requests to which Autonomy has responded or is in the process of responding.

In sum, under the facts presented here, and even focusing primarily on the defendants' conduct, this court finds that there is good cause for the delay in filing the proposed claims. Moreover, the plaintiff will not be prejudiced by the amendment. The defendants are "not springing completely new theories on plaintiff on the eve of trial, or making significant eleventh hour changes." Shea v. Clinton, 288 F.R.D. 1, 5 (D.D.C. 2012) (internal punctuation omitted). The amendment is appropriate.

### D. Futility

Finally, CDP argues that the proposed amendment would be futile because "[t]he offset claim is barred by § 2-717 of the UCC, which only allows setoffs on the same contract." (CDP Opp. at 15). "If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." Hatch v. Dep't for Children, Youth & their Families, 274 F.3d 12, 19 (1st Cir. 2001). In such circumstances, "amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." Id. In the instant case, this court cannot conclude that the proposed amendment is futile as a matter of law on the instant record. Any further analysis of the legal sufficiency of the claim is best resolved at the summary judgment stage, if appropriate.

As an initial matter, Autonomy challenges whether the UCC applies to the contract at issue. Moreover, it appears that Autonomy could present its claim as a simple breach

of contract argument, seeking to "recoup" or "offset" the amounts it claims are due against the amounts it owes under the License Agreement as a matter of convenience. CDP's UCC argument is relevant to whether Autonomy has the right to withhold payment under the License Agreement because of amounts CDP owes under the LiveVault Agreement. See ITV Direct, Inc. v. Healthy Solutions, LLC, 379 F. Supp. 2d 130, 133 (D. Mass. 2005). The UCC does not negate any obligations CDP may have to refund overpayments made by Autonomy.

## IV. CONCLUSION

For all the reasons detailed herein, the "Defendants' Motion for Leave to Amend Answer to Add Counterclaim and Affirmative Defenses" (Docket No. 77) is ALLOWED. The date for completion of fact discovery on the LiveVault Agreement claims is extended to August 2, 2013. The remaining pretrial and trial deadlines remain in effect.

  / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge